UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| CIRO CAICEDO-OBANDO, <br> Institutional ID No. 82561-179, <br><br> Plaintiff, <br><br> v. <br><br> FEDERAL BUREAU OF PRISONS, <br> *et al.*, <br><br> Defendants. | § § § § § § § § § § § § | <br><br><br><br><br> CIVIL ACTION NO. <br> 1:13-CV-187-BL <br><br><br><br> Referred to U.S. Magistrate Judge |

## REPORT AND RECOMMENDATION

Plaintiff Ciro Caicedo-Obando is an inmate at Federal Correctional Institution (FCI) in Big Spring, Texas. Plaintiff is proceeding *pro se* and *in forma pauperis*, and filed his complaint on October 25, 2013, pursuant to, *inter alia*, the Federal Tort Claims Act (FTCA) and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). (*See* Doc. 1). On April 22, 2014, this Court conducted an evidentiary hearing, pursuant to *Spears v. McCotter*, 766 F.2d 179, 181–82 (5th Cir. 1985), and 28 U.S.C. §§ 1915-1915A, in order to clarify certain allegations in Plaintiff's complaint. (*See* Doc. 13). During the evidentiary hearing, Plaintiff orally consented to proceed before a United States Magistrate Judge, and on April 23, 2014, the Clerk of Court mailed him a consent form to complete; however, Plaintiff withdrew his consent on July 8, 2014. (Doc. 16). On June 19, 2014, the Court sent Plaintiff a questionnaire to further clarify the allegations in his complaint. (Doc. 15). On July 8, 2014, Plaintiff filed his answers to the questionnaire, along with the revocation of consent. (Doc. 16). At all times relevant, Plaintiff was confined at FCI Big Spring.

Page 1 of 11

## I. BACKGROUND

Plaintiff claims that on July 17, 2012, around 2:00 pm, while working in food service, he experienced acute abdominal pain in his lower right side, which caused severe chills and nausea. (Doc. 1, p. 23; Doc. 16). Plaintiff alleges that Defendants deliberately denied him medical care. Specifically, Plaintiff claims that Defendant Petrosky ignored his complaints of pain and requests to be taken to the medical unit, and instead, ordered him to "go back to work." (Doc. 1, p. 23; Doc. 16). Plaintiff then informed Defendant DeLeon that he needed to be taken to the hospital, but was denied because DeLeon felt his case was not emergent. (Doc. 1, p. 24). By 4:30 p.m., the pain was so unbearable that Plaintiff could not sit, lie down, walk, or eat. (Doc. 1, p. 24). Plaintiff asked Petrosky for permission to return to his unit, but was told he could not leave until all work was completed. (Doc. 1, p. 24). Plaintiff then reported his pain to Defendant Tubbs, who did nothing to assist Plaintiff. (Doc. 1, p. 24). Because of administrative policies, Plaintiff was unable to place a "sick call" until July 19, 2012. (Doc. 1, p. 25). When Plaintiff was finally seen by the medical unit, he was rushed to the hospital and allegedly diagnosed with a ruptured appendix. (Doc. 1, p. 26). Plaintiff subsequently underwent surgery to remove his appendix, and claims he suffered peritonitis as a result of the delayed appendectomy. (Doc. 1, p. 28).

Plaintiff alleges that Defendants Petrosky, DeLeon, and Tubbs were negligent in failing to administer timely medical aid to Plaintiff, and that this amounted to deliberate indifference towards Plaintiff's serious medical needs. (Doc. 1, p. 29).

Plaintiff named Javier Alveraz as a defendant in this case because he "was responsible for medical care, generally and for arranging for specialized care outside the prison." (Doc. 1). No specific claims are made against Alveraz. Eric Estralla is named because he was "generally responsible for ensuring the provision of medical" to Plaintiff before and after his appendectomy

and post-operative peritonitis. Plaintiff names Lt. Myers because he allegedly retaliated against Plaintiff for taking this legal action. (Doc. 1, p. 29). Karen Edenfield is named because she was in charge of supervising all correctional staff, and therefore was responsible for Plaintiff's injuries and unconstitutional conditions of confinement. (Doc. 1, p. 30).

Defendants allegedly violated Plaintiff's Eighth Amendment rights against cruel and unusual punishment, due to their deliberate indifference to Plaintiff's serious medical needs. Likewise, Plaintiff claims Fifth Amendment due process violations, Thirteenth Amendment violations of rights against servitude, and Fourteenth Amendment equal protection violations. Plaintiff also claims that Defendants tortured him, violating the Alien Tort Claims Act, Torture Victim Protection Act of 1991, Victims of Trafficking and Violence Protection Act of 2000, and the Foreign Sovereign Immunities Act. (Doc. 1, p. 31).

Plaintiff seeks a declaratory judgment that Defendants were deliberately indifferent to his serious medical needs and that they tortured him in violation of international law. (Doc. 1, p. 49). Plaintiff also requests an injunction against the Defendants from attempting to discourage him from pursuing his claims. (Doc. 1, p. 52).

Plaintiff asks for $1,000,000 in compensatory damages, jointly and severally, against Petrosky, DeLeon, and Tubbs; $1,000,000, jointly and severally against Estrella and Alvarez; $1,000,000, jointly and severally against Myers and Edenfield; and $1,000,000 against the Bureau of Prisons. (Doc. 1, p. 53-54). Plaintiff also asks for punitive damages against Petrosky, DeLeon, and Tubbs in the amount of $255,999, each; $125,000 against Estrella and Alvarez; $125,000 against Myers and Edenfield; and an additional $250,000. (Doc. 1, p. 54-55).

Plaintiff also requests the court to reduce or set aside his sentence.[1] (Doc. 1, p. 52).

---

[1] Any challenge to Plaintiff's sentence or conviction should be brought separately in a habeas action. Thus, the Court declines to address this request.

## II.     ANALYSIS

In both proceedings *in forma pauperis* and civil actions brought by a prisoner against a governmental entity, officer, or employee, the court is required under 28 U.S.C. §§ 1915-1915A to dismiss the complaint or any portion of the complaint if the complaint is frivolous or malicious or fails to state a claim upon which relief may be granted. These provisions apply to this *in forma pauperis* prisoner civil rights action. *See Harris v. Hegmann,* 198 F.3d 153, 156 (5th Cir. 1999). "An [*in forma pauperis*] complaint may be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) if it has no arguable basis in law or in fact." *Ruiz v. United States,* 160 F.3d 273, 274-75 (5th Cir. 1998). A claim has no arguable basis in law or fact if it is based on an indisputably meritless legal theory or if, after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless. *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998). The Court is authorized *sua sponte* to test whether the case is frivolous or malicious even before the service of process or before a defendant is required to file an answer. *Ali v. Higgs,* 892 F.2d 438, 440 (5th Cir. 1990); *see also* 42 U.S.C. § 1997e(c)(1). A questionnaire or evidentiary hearing may be used to assist the court in determining whether the case should be dismissed under these provisions. *See Watson v. Ault,* 525 F.2d 886, 892 (5th Cir. 1976) (discussing the use of questionnaires to develop the factual basis of the plaintiff's complaint); *Spears,* 766 F.2d at 181-82 (discussing the use of an evidentiary hearing).

This Court has reviewed Plaintiff's arguments and assertions in his complaint, as supplemented by his testimony at the *Spears* hearing, to determine whether the allegations establish grounds for dismissal or present cognizable claims, which require the Defendants to answer and the case to proceed. Courts are required to construe complaints filed by prisoners proceeding *pro se* liberally. *Erickson v. Pardus,* 551 U.S. 89 (2007); *Estelle v. Gamble,* 429 U.S.

97 (1976). Although Plaintiff cites a plethora of federal statutes and international laws as bases for his complaint, he only provides factual information to support the *Bivens* and FTCA claims. He does not present adequate factual or legal support to sustain any of the remaining allegations. Thus, based on Plaintiff's complaint and testimony, the Court construes Plaintiff's complaint as an action for Eighth Amendment violations under *Bivens* and personal injury recovery under the FTCA. The court **RECOMMENDS** that the remaining claims be **DISMISSED WITH PREJUDICE AS FRIVOLOUS**.

## A. FTCA Claim

As a result of the injuries described in the complaint, Plaintiff filed an Administrative Tort Claim (SF-95), as authorized by the FTCA, against the Bureau of Prisons on August 16, 2012. (Doc. 1, p. 61). Plaintiff requested compensation in the amount of $5,000,000, for the injuries sustained. (Doc. 1, p. 61).

### i. Expired Statute of Limitations

"The [FTCA] is a limited waiver of sovereign immunity, making the Federal Government liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment." *United States v. Orleans*, 425 U.S. 807, 813 (1976). Unless a claimant fully complies with the following two prerequisites, his action in tort is forever barred: (1) the claim must be "filed with the appropriate agency within two years" after accrual of the claim, and (2) a lawsuit must be filed in an appropriate federal court within six months of denial of the claim by the federal agency. *In re FEMA Trailer Formaldehyde Products Liability Litigation*, 646 F.3d 185, 189 (5th Cir. 2011) [hereinafter *In re FEMA*]; 28 U.S.C. § 2401(b); *Ramming v. United States*, 281 F.3d 158, 162 (5th Cir. 2001); *Houston v. United States Postal Serv.*, 823 F.2d 896, 902 (5th Cir. 1987) ("this statute requires a claimant to file an

administrative claim within two years [of accrual] *and* file suit within six months of its denial.") (emphasis in original); *see also Ellison v. United States*, 531 F.3d 359, 361 (6th Cir. 2008); *see also Haceesa v. United States*, 309 F.3d 722 (10th Cir. 2002). Compliance with both requirements is mandatory; any defect deprives federal courts of subject matter jurisdiction to hear the claim, and must be dismissed as such. *In re FEMA*, 646 F.3D AT 189; *Flory v. United States*, 138 F.3d 157, 159 (5th Cir. 1998); *See Bush v. United States,* 823 F.2d 909, 911 (5th Cir.1987).

After an investigation, the Department of Justice (DOJ) found no evidence of negligence and denied the SF-95 on January 30, 2013. (Doc. 1, p. 57-59). In the same communication, Plaintiff was advised that he had six months from the date of the communication, (January 30, 2013), within which to file suit in an appropriate district court, appealing the denial. (Doc. 1, p. 59). Because this suit was filed on October 25, 2013,—approximately nine months after the DOJ's denial—Plaintiff's FTCA claim is barred by the statute of limitations. Accordingly, the Court **RECOMMENDS** that Plaintiff's FTCA claim be **DISMISSED.**

### ii. *Improper Defendant*

The United States is the only appropriate defendant in FTCA claims. *Galvin v. Occupational Safety & Health Administration*, 860 F.2d 181, 183 (5th Cir. 1988) ("It is beyond dispute that the United States, and not the responsible agency or employee, is the proper party defendant in a[n] [FTCA] suit. . . . [T]he courts have consistently held that an agency or government employee cannot be sued *eo nomine* under the [FTCA]."); *Carr v. Veterans Administration*, 522 F2d 1355, 1356 (5th Cir. 1975); *Esquivel-Solis v. United States*, 472 Fed. App'x 338, 339 (5th Cir. 2012) ("FTCA claims may be brought against only the United States, and not the agencies or employees of the United States."); Thus, when an FTCA action is

improperly brought against a United States agency instead of the United States as a sovereign, the claims must be dismissed for want of jurisdiction. *See Galvin*, 860 F.2d at 183; *McBarron v. Federal Bureau of Prisons*, 332 Fed. App'x 961, 964-65 (5th Cir. 2009) ("we find no error in the dismissal of McBarron's FTCA claims against the Bureau of Prisons because such claims may not be brought against a federal agency, and a plaintiff instead must name the United States as the sole defendant.").

Plaintiff has not properly named the United States as a defendant in the suit. Instead, Plaintiff names the Bureau of Prisons and several government employees as defendants. Because the FTCA claim was not brought against the only appropriate defendant, the Court **RECOMMENDS** that Plaintiff's FTCA claim be **DISMISSED** for want of jurisdiction.

## B. Bivens Claims

Plaintiff's primary allegation is that officials were deliberately indifferent to his medical needs, insofar as the officials did not provide prompt medical attention to Plaintiff, thereby allowing his appendicitis to worsen.

To challenge medical care received in prison under *Bivens*, a prisoner must allege that defendants were *deliberately indifferent* to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976). "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *Estelle*, 429 U.S. at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). Thus, a prisoner's complaint must show that a prison official's state of mind was "one of 'deliberate indifference' to [the] inmate['s] health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Because this standard requires a subjective inquiry, the complaining prisoner must establish that "the . . . officials were actually aware of the risk, yet consciously disregarded it." *Lawson v. Dallas*

*County*, 286 F.3d 257, 262 (5th Cir. 2002); *Gobert v. Caldwell*, 463 F.3d 339, 348 (5th Cir. 2006) ("the applicable *mens rea* of deliberate indifference demands subjective knowledge of a substantial health risk."). In other words, to be deliberately indifferent, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." *Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003).

Negligent or "inadvertent failure to provide adequate medical care cannot be said to constitute an 'unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'" *Estelle*, 429 U.S. at 105-106; *Fielder v. Bosshard*, 590 F.2d 105, 107 (5th Cir. 1979). Additionally, the "'failure to alleviate a significant risk that [the official] should have perceived, but did not' is insufficient to show deliberate indifference." *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Farmer*, 511 U.S. at 838). Thus, to show deliberate indifference to his serious medical needs, a claimant must demonstrate that the prison officials "refused to treat him, ignored his complaints, *intentionally* treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (emphasis added). A "prisoner's disagreement with his medical treatment, absent exceptional circumstances," does not constitute deliberate indifference. *Gobert*, 463 F.3d at 346. Further, delayed medical care "can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

Notwithstanding Plaintiff's conclusory allegations that Defendants acted with deliberate indifference, in his complaint and during his *Spears* hearing, Plaintiff failed to cite specific facts

that call to question the subjective knowledge of the Defendants. Although Plaintiff notified Defendants Petrosky, DeLeon, and Tubbs that he was experiencing stomach pain, he alleged no facts showing the Defendants knew that delaying treatment would place Plaintiff at a risk of substantial harm; and any evidence showing that Defendants *purposefully* delayed treatment is lacking.

Further, Plaintiff's medical records do not indicate that he suffered any substantial harm as a result of the delayed medical attention. Plaintiff repeatedly alleges that his appendix ruptured because of the delay in treatment, and that he could have suffered from peritonitis as a result. (Doc. 1, p. 26, 61, 72). Contrary to Plaintiff's allegations of a ruptured appendix, a CT scan showed that Plaintiff's "appendix was distended with fluid, and had mild periappendiceal inflammation, with *no evidence of . . . perforation. . . or rupture*." (Doc. 1, p. 58) (emphasis added). Records also indicate that his appendectomy was performed without incident. (*See* App'x).

At his *Spears* hearing, in sum, Plaintiff argued that certain Defendants violated his Eighth Amendment right against cruel and unusual punishment by delaying his medical care. Plaintiff's testimony concerning the factual basis of his claims, however, belies such a conclusion from this Court. While Plaintiff testified that he told Defendants he was in pain on July 17, 2012, he told no one that he was in pain the following day. Additionally, he testified that due to his pain, he believed that his appendix had burst, although he acknowledged that the medical records showed that his appendix had not burst. He also testified that doctors made no mistakes in performing his appendectomy, and the medical staff did not mistreat him following the operation. Further, Plaintiff stated that he named Edenfield as a Defendant only because "she was responsible for the services at the prison," and Defendants Estrella, Alvarez, and Edenfield did nothing to harm

him. When asked if he believed Petrosky, DeLeon, and Tubbs were intentionally trying to harm him or if they were negligent by delaying his treatment, Plaintiff testified only that he could not explain "what they did on those days."

In his response to the Court's questionnaire, (Doc. 15), Plaintiff contradicted his *Spears* testimony by claiming that "[b]ecause of the delay in time I suffered a raptured [sic] Appendix, and dealt with so much pain that I cann't [sic] even describe it." (Doc. 16, p. 6). Plaintiff also stated that Petrosky and DeLeon acted negligently *and* intentionally by delaying his medical care. (Doc. 16, pp. 9-11). Despite the contradictory nature of his answers, again, he provided no factual basis to support his allegations.

As a whole, Plaintiff does not demonstrate that Defendants were aware of a risk of serious harm to Plaintiff or that such risk was obvious—thus Plaintiff fails to show that Defendants were deliberately indifferent. Additionally, Plaintiff fails show that Defendants' actions resulted in any substantial harm to Plaintiff. Accordingly, the Court **RECOMMENDS** that Plaintiff's *Bivens* claims be **DISMISSED WITH PREJUDICE AS FRIVOLOUS.**

### III.   CONCLUSION

Based on the foregoing, the Magistrate Judge **RECOMMENDS** that the District Judge **DISMISS WITH PREJUDICE** Plaintiff's complaint as frivolous.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's Report and Recommendation where the disputed

determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**SO ORDERED.**

This 6th day of March, 2015.

_____
E. SCOTT FROST
**UNITED STATES MAGISTRATE JUDGE**